WOHLER LIVESTOCK COMPANY, INC., d/b/a Wohler Livestock Products and Texas Vet Lab, Inc., Plaintiffs,

v.

Patricia HARRIS, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 6–79–34.

United States District Court,
N. D. Texas,
San Angelo Division.

Entered Feb. 14, 1980.

Filed Feb. 15, 1980.

James A. Walters, Walters & Associates, Lubbock, Tex., Charles L. Dorothy, Qualley, Larson & Jones, Sioux Falls, S. D., for plaintiffs.

Kenneth J. Mighell, U. S. Atty., Dallas, Tex., Bob D. Slough, Asst. U. S. Atty., Lubbock, Tex., for defendant.

## MEMORANDUM

WOODWARD, Chief Judge.

On the 8th day of February, 1980, a hearing was held in Lubbock, Texas at which the court considered the defendant's motion to dismiss and alternative motion for summary judgment. All parties were represented by counsel who presented their arguments to the court.

This action arises out of the plaintiffs' complaint that the Food and Drug Administration (FDA) is attempting to exceed its jurisdiction in the regulation of the plaintiffs' businesses. The plaintiffs are entities involved in the manufacture and distribution of animal biologics. The plaintiffs assert that they are not subject to FDA jurisdiction because they are not involved in interstate commerce and operate wholly within the State of Texas. In this regard, the plaintiffs seek declaratory relief that the FDA does not have jurisdiction to regulate intrastate animal biologics. The FDA on the other hand claims that they have long held jurisdiction over the activities of the plaintiffs. Without going any further into the merits of this action, it is appropriate to point out that this jurisdictional question is the real controversy between the parties.

This action was precipitated, however, by a memo issued by the Bureau of Veterinary Medicine of the FDA on July 17, 1979. The memo directed the Bureau's regional offices to inspect selected animal biologic manufacturers. The Dallas regional office was directed to inspect any one of three manufacturers. Wohler Livestock Products Company was one of the three. The Wohler facility was never inspected, however, and at the present time the FDA states that it has no intention of inspecting the Wohler facility.

2

Regardless of the FDA's stated position, the plaintiffs point out that in 1976 Dr. Wohler filed a similar action to the one at bar against the FDA contesting the FDA's jurisdiction. That action was subsequently dismissed upon an agreed order of dismissal. The apparent reason for the dismissal was the FDA's reevaluation of its jurisdiction and determination that Dr. Wohler would not be required to register as a manufacturer and distributor of drugs.

Upon these facts this court must decide if this is a case ripe for judicial resolution. In 1967 the Supreme Court considered a trilogy of cases concerning pre-enforcement judicial review. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Association v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Association*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). In *Abbott* the Court stated that "where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts . . . must be permitted." *Abbott*, at 153, 87 S.Ct. at 1518. The Court attached significant importance to the direct and immediate impact a FDA regulation had upon the plaintiffs in *Abbott*. In the companion case of *Toilet Goods Association v. Gardner*, the Court further developed its reasoning in *Abbott* and stated that the proper avenue for review in a pre-enforcement challenge case to be a two-fold inquiry. *Toilet Goods* 387 U.S. at 162, 87 S.Ct. at 1523. First, a court must determine if the issues tendered are appropriate for judicial review and second, weigh the hardship upon the parties if judicial relief is denied. *Id.* at 162, 87 S.Ct. at 1523.

■ In consideration of the first prong the Court recognized that in many instances a purely legal question seemingly appropriate for judicial review is presented to a court. The Court stated, however, that in many instances other factors can outweigh support of immediate judicial resolution.

Factors considered important in *Toilet Goods* were that the plaintiffs in that case were not under a direct and immediate threat of inspection or denial of certification. As the Court stated, "at this juncture we have no idea whether or when such an inspection will be ordered and what reasons the Commissioner will give to justify his order." *Id.* at 163, 87 S.Ct. at 1524. This court finds itself in an analogous position. While the FDA *may* apparently choose to inspect the plaintiffs' facilities at some future time it does not intend to at the present. Moreover, the reasons and the authority to inspect at a future time are not appropriately before the court at this time and would be "on much surer footing in the context of a specific application" of FDA jurisdiction. *Id.* at 164, 87 S.Ct. at 1524.

The plaintiffs' case also fails on the second prong of the two-fold inquiry. While the plaintiffs may argue that the FDA's claim of jurisdiction over intrastate animal biologics manufacturers has an enormous effect upon them, the real question is whether the agency action has a direct effect upon the daily activity of the plaintiffs. *Abbott*, at 152, 87 S.Ct. at 1517. In this case there has been no formal inspection and the FDA has not required the plaintiffs to conform to any agency standards. Accordingly, this court can see no direct or immediate effect upon the day-to-day activities of the plaintiffs.

This case is much like the Second Circuit case of *Daley v. Mathews*, 536 F.2d 519 (2d Cir. 1976), *cert. denied* 430 U.S. 930, 97 S.Ct. 1548, 51 L.Ed.2d 773 (1977). In *Daley* the FDA maintained that the plaintiff, a doctor, was illegally distributing a particular drug in the treatment of arthritis. On two occasions the FDA had attempted to inspect the plaintiff's offices but had been refused. Subsequently the plaintiff brought suit seeking a declaratory judgment that the FDA lacked jurisdiction to inspect her offices. The case was dismissed, however, for lack of ripeness. The Second Circuit found that it was impossible to predict what the FDA would attempt in the future although the FDA still believed Dr. Daley to be oper-

ating illegally. *Id.* at 521–22. Further, the court reasoned that the tentative possibility of a future inspection was not such a hardship upon the plaintiff to require pre-enforcement review. *Id.* at 522. This court is in agreement with the Second Circuit and believes that the question of the FDA's jurisdiction over intrastate manufacturers of animal biologics is more properly raised in the context of an action challenging its specific application.

This court is also not swayed by the argument of the plaintiffs that in the future refusal to allow inspection of their facilities by the FDA could lead to criminal penalties. The possibility of criminal sanctions applying does not of itself create a case or controversy. *Boating Industry Associations v. Marshall,* 601 F.2d 1376, 1385 (9th Cir. 1979). Therefore in the absence of any other factor demonstrating to this court that this case is ripe for review it is not appropriate for this court to base ripeness solely upon the possibility of criminal sanctions.

Accordingly, the action is dismissed without prejudice.